UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

TONY L. EPPS, et al.,                          :
                                               :
                    Plaintiffs,                :
                                               :
v.                                             : ACTION NO. 2:10cv189
                                               :
ARISE SCAFFOLDING & EQUIPMENT, INC.,           :
d/b/a Arise  Waco Scaffolding &                :
Equipment, et al.,                             :
                                               :
                    Defendants.                :

## REPORT AND RECOMMENDATION

This Fair Labor Standards Act, 29 U.S.C. § 201-219, ("FLSA"
or the "Act") claim is before the Court to resolve three
pretrial motions.  Plaintiffs seek additional compensation from
their employer, Arise Scaffolding & Equipment, Inc., d/b/a Arise
Waco Scaffolding & Equipment, Inc. ("Waco" or the "company").
They claim Waco's policy requiring employees to report to the
shop early, load company vans, and ride to the job sites
together as a crew, renders this time compensable under the Act.

Without conceding any liability, Waco agrees that certain
of plaintiffs' claims will have to be resolved at trial.  The
company argues, however, that one class of workers is not
eligible for additional compensation because the brief
instructions they receive prior to travelling and their loading

1

and unloading of personal tools and incidental materials are not integral or indispensable to their work. Waco therefore moved for partial summary judgment on those plaintiffs' claims, arguing the undisputed facts foreclose their claims for relief. (ECF No. 118). The company has also moved for summary judgment on these plaintiffs' claims that Waco willfully violated the Act, arguing that if they are entitled to recover, their claims are limited to the statute's two-year limitation period.

Waco has also moved to decertify the opt-in plaintiffs who they argue are not sufficiently similarly situated to constitute an appropriate class under the Act. (ECF No. 138). Finally, in the event the Court denies relief on the first two motions, Waco moves to bifurcate the trial on liability and damages in order to streamline issues of proof and reserve damage calculations until after the liability threshold is crossed. Id.

Plaintiffs filed briefs opposing both the motion for partial summary judgment and motion to decertify (ECF Nos. 124, 139), and also argued that one trial on liability and damages would be more efficient than a bifurcated proceeding.

By Order entered January 25, 2011, all of the motions were referred to the undersigned for a Report and Recommendation. The Court heard oral argument on February 3, 2011 and the matters are ripe for a recommended decision. For the reasons

2

that follow, the undersigned recommends that the Court GRANT in part and DENY in part Waco's motion for partial summary judgment, DENY the company's motion to decertify, and GRANT its request for a bifurcated trial.

## A. RECOMMENDED FINDINGS OF MATERIAL FACT

Waco erects and dismantles scaffolding, primarily for marine clients.[1] Typically, local shipyards hire Waco to erect scaffolding on a pier or ship to enable the yard's workers to access parts of a ship they cannot otherwise reach. (ECF No. 137, ¶¶ 1 - 2). The named plaintiffs and opt-in plaintiffs are all individuals who worked as hourly employees for Waco out of its location in Portsmouth, Virginia, sometime between April, 2007 and May, 2010. Some of these plaintiffs were hired and paid exclusively by Waco and some were hired and paid by Tidewater Staffing, Inc. ("TSI") on the basis of hours reported to TSI by Waco.[2] Id. at ¶¶ 3-4.

Plaintiffs' claims against Waco involve three types of jobs at the company: Erectors, Drivers, and Foremen. Erectors, the largest group of employees, construct and dismantle scaffolding.

---

[1] The facts of the case are summarized from the parties' detailed pretrial stipulations in the pretrial order, (ECF No. 137), and from motion exhibits, (ECF Nos. 119-1 - 119-2; 124-1 - 124-11). Where facts are in dispute this recommendation considers them in the light most favorable to plaintiffs.

[2] TSI, also named as a defendant, settled with plaintiffs after filing several pretrial motions. Although three of TSI's motions are similar to the Waco motions addressed here, pending approval of its negotiated settlement, TSI's motions are not presently before the Court.

Drivers drive company-owned vehicles between various job sites and the Waco yard, transporting materials and workers. Foremen are crew leaders who supervise and direct the erection crews. Both Drivers and Foremen also serve as Erectors at the job site, but not all Erectors serve as Drivers or Foremen. Id. at ¶¶ 11-13, 19.

During the relevant time period, Waco required all of its employees to report to a central location – either the Waco shop in Portsmouth, or a local parking lot – to begin each workday. (Epps. Dep., ECF No. 119-1, p. 43; Briggs Dep., ECF No. 119-1, p. 7). On arriving, the Erectors generally had to wait for a period of time until the Foremen advised which crew they were assigned to. Foremen assigned Erectors to a work crew based on the employees available to work that day and the skills of each. (Weakland Dep., ECF No. 124-1, pp. 35-36, 43-48; Briggs Dep., ECF No. 119-1, p. 11; Colona-Jones Dep., ECF No. 124-10, p. 7). Crews needed to include a balance of workers, including those who could climb and build the scaffolding, and others who moved material on the ground. (Briggs Dep., ECF No. 119-1, p. 20). After receiving their assignments, workers would load the vans with their personal tools and safety equipment. These tools were generally worn on a tool belt or carried in a bag belonging to the employee. (Jones Dep., ECF No. 119-1, pp. 25-26; Epps

4

Dep., ECF No. 119-1, p. 42; McIntosh Dep., ECF No. 119-2, p. 16). Items of protective gear, including gloves, lanyards, harnesses, and retractable lanyards were also loaded into the vans by the employees. (Reeves Dep. ECF No. 119-1, p. 50; Moffitt Dep., ECF No. 124-5, pp. 7-8). Sometimes specialized gear was loaded based on the particulars of the job. (Weakland Dep., ECF No. 124-1, pp. 37-38).

Although sharply contested, there is testimony that Erectors also regularly[3] loaded small pieces of scaffolding including clips, bands, clamps, and smaller scaffolding bars and boards into the vans. (Weakland Dep., ECF No. 124-1, pp. 28-31; Moffitt Dep., ECF No. 124-5, pp. 6-7; Jackson Dep., ECF No. 124-8, pp. 9-10; Wright Dep., ECF No. 124-9, p. 4; Reeves Dep., ECF No. 119-1, p. 50; Colona-Jones Dep., ECF No. 124-10, p. 6). After receiving their assignments, boarding the vans with their tools, and loading the incidental materials, the vans departed to various locations where the company would erect or dismantle scaffolding. (Reeves Dep., ECF No. 119-1, p. 57). The larger pieces of scaffolding were transported to the job site on

---

[3] The sharpest conflict in the facts involves the question of whether this material loading was a regular or infrequent component of the plaintiffs' duties. This recommendation adopts a view of this conflicting evidence most favorable to plaintiffs, consistent with the summary judgment standard of review.

different trucks loaded by different employees. (Epps Dep., ECF No. 119-1, pp. 38-39; ECF No. 137, ¶ 22).

The length of the ride from the shop to the job site varied from between twenty minutes to one hour with most trips lasting between twenty-five and thirty minutes. (McIntosh Dep., ECF No. 124-4, pp. 11-12, 15-18; Williams Dep., ECF No. 119-2, p. 31). During the ride, employees listened to music and talked about sports or other matters of general interest. (Briggs Dep., ECF No. 119-1, p. 19). Sometimes the vans would stop briefly to get gas, breakfast, or coffee. (McIntosh Dep., ECF No. 124-4, p. 10; Reeves Dep., ECF No. 119-1, p. 52).

Unless also serving as a Driver or Foreman, Erectors were not paid for any time prior to arriving at the job site and going "on the clock." (ECF No. 137, ¶ 15; Zimmerman Dep., ECF No. 119-2, p. 43; Weakland Dep., ECF No. 124-1, pp. 33-34). The Erectors' primary job is to erect and dismantle scaffolding. Their work at the job site involved moving scaffolding from the truck to the location where it would be erected, assembling scaffolding sections, and securing them. (ECF No. 137, ¶ 11). Some of the Erectors, called Carpenters, worked on the scaffolding, secured by harnesses and lanyards, to build scaffolding as it was erected. Id. Others were primarily employed on the ground, moving scaffolding from the trucks to

6

the location where it would be erected and reversing the process during dismantling. (Id.; Colona-Jones Dep., ECF No. 124-10, p. 5). These ground-based workers were regularly referred to as Groundmen. Groundmen and Carpenters are collectively referred to as Erectors, to distinguish them from Foremen or Drivers. (ECF No. 137, ¶ 19).

At the conclusion of the day, the collective commute was reversed. The employees would board the van and cease being paid when they left the job site. (ECF No. 137, ¶ 15). They were transported back to the shop where they were required to unload their personal tools. They were not allowed to leave personal tools on the van overnight, and thus, their personal tools were loaded and unloaded each day. (Weakland Dep., ECF No. 124-1, pp. 27-28; Moffitt Dep., ECF No. 124-5, pp. 7-8, Reeves Dep., ECF 119-1, pp. 65-66).

The parties have stipulated that the preparation and travel time spent by Drivers and Foremen is compensable (ECF No. 137, ¶¶ 60 - 64). Drivers actually transport the workers for the benefit of the company, and Foremen receive work assignments, assemble crews, and manage those Erectors and Drivers assigned to their crew. However, on these facts, Waco argues that Erectors' wait and travel time is not compensable because the instructions and loading which occur prior to the van's

7

departure, and on its return are not integral or indispensable to the primary work activity of Erectors - erecting and dismantling scaffolding. Waco also claims the activity is of such short duration as to be <u>de</u> <u>minimis</u> and insufficient to trigger liability for the travel time which follows.

## B. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 requires the Court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-24 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Spriggs v. Diamond Auto Glass</u>, 242 F.3d 179, 183 (4th Cir. 2001) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).

The party seeking summary judgment has the initial burden of informing the Court of the basis of its motion and identifying materials in the record it believes demonstrates the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); <u>Celotex Corp.</u>, 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is

8

insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000); <u>see</u> <u>Anderson</u>, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249.

## C. RECOMMENDED CONCLUSIONS OF LAW

Where employees seek compensation for work-related travel time, "[t]he critical inquiries . . . are <u>when</u> and <u>where</u> the workday starts, for once it begins, the continuous workday rule applies" and exceptions to the Act for travel and preliminary activities do not apply. <u>Gortat v. Capala Brothers, Inc.</u>, 257 F.R.D. 353, 361 (E.D.N.Y. 2009) (emphasis in original). Because the FLSA requires employers to pay their employees for all time spent working on their behalf, Waco must compensate the

9

plaintiffs when they begin to work. See Lee v. Am-Pro Protective Agency, Inc., 860 F. Supp. 325, 327-28 (E.D. Va. 1994).

The Act does not define the term "work", but the Supreme Court has defined the term "broadly." IBP, Inc. v. Alvarez, 546 U.S. 21, 25-26 (2005). The "work" inquiry examines "[w]hether time is spent predominantly for the employer's benefit or for the employee's [and] is a question dependent upon all the circumstances of the case." Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944).

Partly due to the Court's expansive definition of "work", the Portal-to-Portal Act, 29 U.S.C. §§ 251-262, amended the FLSA to exempt from compensation certain activities that had been treated as compensable under the Act. Alvarez, 546 U.S. at 27. As relevant here, § 4 of the Portal-to-Portal Act excludes from FLSA protection: "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a).

Although the Portal-to-Portal Act eliminated employer liability for previously compensable activity, "[o]ther than its express exceptions for travel to and from the location of the

10

employee's `principal activity,' and for activities that are preliminary or postliminary to that principal activity, the [Act did] not purport to change [the Supreme] Court's earlier descriptions of the terms `work' and `workweek,' or to define the term `workday.'" Alvarez, 546 U.S. at 28.

Thus, it remains the rule that during a continuous workday, any walking, riding, or traveling time that occurs "after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of [§ 4(a) of the Portal-to-Portal Act], and as a result is covered by the FLSA." Id. at 37. Federal regulations, therefore, expressly contemplate compensation for travel time under certain circumstances.

> Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice.

29 C.F.R. § 785.38 (emphasis added).

Waco's motion, then, depends on whether the early reporting, loading activity and instructions are "principal activities." The term "principal activity or activities"

embraces not just the predominant or principal function of an employee but also "all activities which are an 'integral and indispensable part of the principal activities.'" Alvarez, 546 U.S. at 29-30 (quoting Steiner v. Mitchell, 350 U.S. 247, 252-53 (1956)). The term is to be construed liberally and includes "any work of consequence performed for an employer no matter when the work is performed." Dunlap v. City Electric, Inc., 527 F.2d 394, 398 (5th Cir. 1970). If Erectors' first principal activity takes place before traveling to a job site, and their last principal activity takes place after returning from the site, then, under Alvarez, their travel time would be included within their workday. See Smith v. Aztec Well Servicing, Inc. 462 F.3d 1274, 1289 (10th Cir. 2006).

Waco argues that the undisputed facts establish that Erectors did nothing prior to arriving at the job site which is integral or indispensable to their principal activity of building and dismantling scaffolding. As a result, Waco claims their time waiting at the shop, loading the vans, and travelling to the job site is excluded by § 4(a) of the Portal-to-Portal Act. The question on summary judgment, however, is whether any reasonable juror could find that this required activity triggered the start of the Erectors' workday. The undersigned concludes that a reasonable juror could so find.

Taking the elements set forth in the regulation and viewing the facts in the light most favorable to plaintiffs, they have established that they were "required to report at a meeting place." 29 CFR § 785.38. This place varied, but was usually either the Waco shop or a designated parking lot. (Briggs Dep., ECF No. 119-1, p. 7). In either case, however, employees were required to report directly there and were not permitted to drive directly to the worksite. (Weakland Dep., ECF No. 124-1, pp. 13-15) (stating "[t]hey could not drive, no sir."). This collective commute is, by itself, insufficient to render their travel time compensable. Aztec Well, 462 F.2d at 1288 (well drilling crews' mandatory ride to well site not compensable); Ralph v. Tidewater Construction Corp., 301 F.2d 806, 808 (4th Cir. 1966) (bridge workers' boat ride to job site not covered by FLSA). The other activity they engaged in prior to leaving may, however, bring the time within the Act's requirements.

**1.    Erectors received necessary instructions at the Waco shop.**

The record indicates that Erectors were not assigned to work crews until after the Foremen met with Operations Manager Gene Weakland at the start of each workday. During these meetings, Weakland assigned employees to various work crews according to which project the company was staffing, who was

13

available to work, and the qualifications (both vocational and legal) of available workers. (Weakland Dep., ECF No. 124-1, pp. 48-49). This fact alone distinguishes Erectors' claims from those of the well drillers at issue in <u>Aztec Well</u>, 462 F.3d at 1290-91, and the bridge builders in <u>Tidewater Construction</u>, 361 F.2d at 807.

Although workers sometimes had an idea which crew they would be assigned to, the early reporting was still mandatory. (Colona-Jones Dep., ECF No. 124-10, p. 7, lines 9-20). Weakland testified that the company tried to prepare individual crew sheets for each job "every single morning." (Weakland Dep., ECF No. 124-1, p. 48).

**2. Most Erectors loaded tools.**

Many Erector plaintiffs loaded personal tools each day, and unloaded the same tools at the conclusion of their shift. Company policy prohibited employees from leaving tools on the vans. Moreover, the daily assignment of workers to particular crews made the daily loading of tools necessary.

At oral argument, counsel contended that the loading of Erectors' personal tools would not fit the description in 29 CFR 785.38 because the regulation referred to employees who had "to pick up and to carry tools." This may be too fine a sematic point, but it is unnecessary to address it as the evidence, by

14

exhibit, is that most plaintiffs "carried" tools. Many wore their tools on a personal tool belt, (Moffitt Dep., ECF No. 124-5, pp. 6-7), although at least one plaintiff testified that he carried them in a bag, (McIntosh Dep., ECF No. 119-2, p. 16). In either event, the tools had to be removed from the van each night. Some employees stored their tools in company-provided lockers (Weakland Dep., ECF No. 124-1, pp. 27-28; Reeves Dep., ECF No. 119-1, p. 65) and they would therefore would pick up and carry them at the beginning and end of each workday. Waco does not dispute that the tools were necessary to Erectors' work. In addition, there is evidence that shop-owned tools were sometimes loaded into the vans, including shovels, power drills, and hoists. (Briggs Dec. ECF No. 124-2, pp. 2-3).

**3. Erectors regularly performed "other work" at the meeting site.**

In addition to receiving instructions and loading tools, plaintiffs' evidence is sufficient for a reasonable juror to find that Erectors performed "other work" at the Waco shop before departing for a job site. Although not directly addressed by Waco, the fact that Erectors were required to report at a designated time and prevented from working until job assignments were made, may itself be compensable work under the Act. See Vega v. Gasper, 36 F.3d 417, 425-27 (5th Cir. 1994)

15

(recognizing that both travel time and wait time can be compensable). Several cases address the issue of wait time imposed as a result of events beyond the control of employees. See Brock v. DeWitt, 633 F. Supp. 892 (W.D. Mo. 1986) (restaurant workers forced to wait until managers authorized them to "clock in" were entitled to FLSA wages); Donovan v. 75 Truck Stop, Inc., 92 L.C. 44,080 (BNA (M.D. Fla. 1981) (truck washers entitled to compensation for time spent waiting for trucks to arrive). In each case, the question of whether such wait time is compensable turns on whether the waiting is primarily for the benefit of the employee or the employer. Vega, 36 F.3d at 425. As with other activity, if waiting is primarily for the benefit of the employer, it is compensable work under the Act. Mireles v. Frio Foods, Inc., 899 F.2d 1407, 1411 (5th Cir. 1990).

There is ample evidence in the summary judgment record to show that plaintiffs were required to report at a specific time and were not able to begin work until arriving at a job site, sometimes thirty to sixty minutes later. The parties offer a variety of justifications for this policy. Waco argues that it benefited employees, some of whom lacked transportation or credentials to gain admission to restricted worksites. (Weakland Dep., ECF No. 124-1, p. 33)("These guys couldn't get

to the job site. Therefore, the vehicles that were made available at the company were for their convenience."). Plaintiffs argue that the early meeting time benefited Waco as it provided the company flexibility in staffing its jobs, helped ensure a full complement of workers at each job site, and allowed the company to avoid paying workers who arrived to work when insufficient work was available. See e.g. (Weakland Dep., ECF No. 124-1, p. 13, "There was [sic] no delays. We went there on a time schedule. We had to get inside the shipyards."; p. 36, "Did you ever ... require them to report and send them home? Yes sir, sure have"); (Reeves Dep., ECF No. 124-7, pp. 17-23) ("After [the Foremen meeting] all the Foremen gather up their people that they're using for the day and get your tools, get the van loaded up with anything you needed.").

In addition to the time spent just waiting, several plaintiffs testified that Erectors helped load incidental scaffolding material into the vans on a regular basis. Waco strongly disagrees that such loading was a regular part of Erectors' work day. They characterize the material loading as rare, or at most occasional, and always brief. (Morris Dep., ECF No. 126-1, p. 16), (material loading was "no everyday thing" occurring perhaps "ten times" per year). By contrast, some plaintiffs have testified that material loading occurred as

17

often as three times per week and lasted as much as twenty minutes to an hour. (Jackson Dep., ECF No. 24-8, pp. 10, 13). The issue of work performed is central to resolving Erectors' claims of liability, and disputes over these material facts preclude granting summary judgment against them on this record.

### 4. Required activities were not de minimis.

Waco's strongest argument against liability for the Erectors is that these activities – loading tools, receiving crew assignments, and loading incidental material – even if otherwise compensable, were de minimis and therefore preliminary and postliminary rather than integral and indispensable to their principal activity. Again, viewing the evidence in the light most favorable to plaintiffs, this is not correct.

"[N]o precise amount of time or rigid rule based on mathematical certainty can be applied by a court to determine what constitutes de minimis work." Adams v. School Board of Hanover Cty., No. 3:05cv310, 2008 WL 5070454, at *11 (E.D. Va. Nov. 28, 2008). In an unpublished decision, the Fourth Circuit suggested that tasks taking less than ten minutes are de minimis under the FLSA. Myers v. Baltimore County, 50 Fed. App'x. 583, 589 n.6 (4th Cir. 2002), 2002 WL 31236296, at *4 (citing Lindow v. United States, 738 F.2d 1057, 1062-63 (9th Cir. 1984) (task taking seven to eight minutes per day is de minimis)). In

18

Lindow, the Ninth Circuit set forth a three-prong test for deciding whether a task is de minimis: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." Adams, 2008 WL 5070454, at *11 (quoting Lindow, 738 F.2d at 1063).

Here, it was not particularly difficult to record the designated arrival times for employees. The other work they performed prior to departure occurred on a regular basis. This work involved a variety of required activities which, while independently of short duration, may in the aggregate exceed the de minimis threshold. In addition, testimony from some plaintiffs establishes that material loading itself sometimes exceeded twenty minutes. (Jackson Dep., ECF No. 124-8, p. 13). Viewing this evidence in the light most favorable to plaintiffs, they have presented sufficient facts to survive defendant's motion for partial summary judgment.

For these reasons, the undersigned concludes that disputed material facts preclude entry of summary judgment against Erectors on their claims of liability. As a result, this report recommends that Waco's motion for partial summary judgment on this ground be DENIED.

## D.  STATUTE OF LIMITATIONS

A two-year statute of limitations applies to ordinary violations of the FLSA, but a three-year statute of limitations applies to willful violations.    29 U.S.C. § 255(a).[4]    When enacted, the FLSA did not provide a limitations period; therefore, actions were governed by state statute of limitations.  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 131 (1988).    In the Portal-to-Portal Act, "as part of its response to [the Supreme Court's] expansive reading of the FLSA, Congress enacted [a] 2-year statute to place a limit on employers' exposure to unanticipated contingent liabilities."  Id. at 131-32.    In 1966, Congress enacted a three-year limitation period for willful violations.  Id. at 132.    The two-tier statute of limitations now in place "makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations."  Id. at 132-33.

"[T]he word 'willful' is considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional,'" and "is generally understood to refer to conduct that is not merely negligent."  Id. at 133.    As articulated by the Supreme Court, a violation is willful if the employer either knew or showed

---

[4] The statute provides, in relevant part, that an action under the FLSA "may be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).

reckless disregard for whether its conduct was prohibited. Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128-29 (1985) (analyzing willfulness under the Age Discrimination in Employment Act); see McLaughlin, 486 U.S. at 133-35 (incorporating the standard of willfulness articulated in Thurston to violations of the FLSA). "If an employer acts unreasonably, but not recklessly, in determining its legal obligation" it is not considered willful. McLaughlin, 486 U.S. at 135 n.13. The employee bears the burden of proving a willful violation of the FLSA. Desmond v. PNGI Charles Town Gaming, L.L.C., ___ F.3d ___, 2011 WL 117575, at *6 (4th Cir. Jan. 14, 2011) (citing McLaughlin, 486 U.S. at 135).

Waco contends that Erectors have failed to satisfy their burden of proof; therefore, the two-year statute of limitations applies. Plaintiffs only evidence in the summary judgment record on this issue is the declaration of plaintiff Anthony L. Briggs who states that he has worked for three local scaffolding companies in addition to Waco and each of those companies required employees to report to a designated location before proceeding to the job site. Each of the three companies compensates its workers from the time they are required to report in the morning until they return to the meeting location at the end of the day. (Briggs Dec., ECF No. 124-2 at ¶¶ 13-

16). According to plaintiffs, "[t]hat fact alone suffices to establish that Arise Waco acted willfully." (ECF No. 124, p. 28).

After reviewing the record in the light most favorable to Erectors, no genuine dispute of material fact exists as to willfulness. The evidence submitted by plaintiffs does not support a finding that any violation of the FLSA on the part of Waco was willful with regard to its failure to pay Erectors for their preparatory work and travel time. Plaintiffs rely solely on the fact that three of Waco's local competitors determined travel time to be compensable. Given the fact intensive inquiry necessary to determine whether Erectors' preparatory time is compensable, knowledge of that fact alone would not necessarily prove a willful violation of the FLSA. However, to the extent such knowledge would create a genuine dispute, there is no evidence in the summary judgment record that Waco was aware of this fact.

Instead, there is ample evidence in the record that Waco believed travel time was not compensable for workers not driving or supervising the work crews.[5] Waco previously encountered the

---

[5] Counsel for Waco clarified at oral argument that the motion for summary judgment on plaintiffs' claims of a willful violation applied only to the Erectors' claims. Waco knew Drivers and Foremen were required to be compensated based on their more extensive duties prior to arriving at the job site.

travel time issue with its employees in California and the union representing those employees agreed with Waco's position that travel time was not compensable. (Zimmerman Dec., ECF No. 119-2, Ex. K). Further, Waco has submitted evidence demonstrating that management believed it was paying Erectors for time spent performing the duties of their job, namely, scaffolding work. (Zimmerman Dep., ECF No. 119-2, Ex. I; Weakland Dep., ECF No. 119-2, Ex. J; Zimmerman Dec., ECF No. 119-2, Ex. K). Waco never refused to pay employees for time worked. (Weakland Dep., ECF No. 119-2, Ex. J). This evidence, in addition to the fact that the caselaw is divided on the question of whether travel time is compensable on similar facts, precludes a finding that Waco willfully violated the FLSA by not paying Erectors for this additional time. Compare Aztec Well, 462 F.3d 1274 (10th Cir. 2006), with Gortat v. Capala Bros., 257 F.R.D. 353 (E.D. N.Y. 2009) and Dole v. Enduro Plumbing, No. 88, 1990 WL 252270 (C.D. Ca. 1990). In short, Erectors have proffered no evidence that Waco intentionally violated the FLSA and are therefore not entitled to the three-year statute of limitations on their claims. As a result, the undersigned recommends that Waco's motion for partial summary judgment on this ground be GRANTED.

## E.  MOTION TO DECERTIFY

As an alternative to its motion for partial summary judgment on Erectors' claims, Waco also moves to de-certify the class on the grounds that plaintiffs are too dissimilar to litigate collectively under the Act.  (ECF No. 138) (joining TSI's motion to decertify [ECF No. 127]).

Under the FLSA, plaintiffs may institute collective action against an employer alleged to have violated the Act's substantive provisions.  Section 216(b) of the Act permits parties to bring collective action but requires that no employee be made "a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action has been brought." 29 U.S.C. § 216(b).

Assembling a class under Section 216(b) generally involves two steps.  First, if the Court makes a preliminary determination to give notice to potential class members, it "conditionally certifies" the class, and potential class members can "opt in" by filing written consents.  Purdham v. Fairfax County Public Schools, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009). At this stage, the plaintiff bears the burden of showing the existence of a potential class of similarly situated employees. Although the burden is light, courts analyzing the notice stage

24

generally require some evidence – "mere allegations will not suffice". <u>Bernard v. Household International, Inc.</u>, 231 F. Supp. 433, 435 (E.D. Va. 2002). Because a court has minimal evidence at the notice stage, determining whether a class of employees is similarly situated generally involves a fairly "lenient standard". <u>Choimbol v. Fairfield Resorts, Inc.</u>, 475 F. Supp. 2d 557, 562 (E.D. Va. 2006). Following conditional certification and notice, if the defendant believes individual employees, or groups of employees are not similarly situated it may move to "decertify" the class. At that point, generally after discovery is complete, the court makes factual findings as to whether the class is truly similarly situated. <u>Purdham</u>, 629 F. Supp. 2d at 547 (citing <u>Parker v. Rowland Express, Inc.</u>, 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007)).

In considering a motion to decertify alleging dissimilarity of the plaintiff class, courts have considered three factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." <u>Rawls v. Augustine Home Health Care, Inc.</u>, 244 F.R.D. 298, 300 (D. Md. 2007); <u>see also</u> <u>Sharer v. Tandberg, Inc.</u>, No. 06-CV-626, 2007 WL 676220, at *2 (E.D. Va. Feb. 27, 2007).

Because Waco joined in TSI's Motion to Decertify without extensive briefing of its own, the Court examined the arguments set forth in TSI's brief. That defendant essentially argued decertification was appropriate due to plaintiffs' different employment relationships, factual circumstances, and legal claims. (ECF No. 128, p. 3). To the extent the first of these arguments had any force, it has been mooted by TSI's settlement, leaving the only employment relationship as that between Waco and plaintiffs. The other two claims raised in TSI's motion are not supported by the record.

TSI's brief argues at length regarding the different jobs held by plaintiffs. Indeed, the parties have stipulated that most plaintiffs served in a variety of capacities - as Drivers, Foremen, and Erectors. It is also plain that certain individual plaintiffs may lack legal or professional credentials to work everywhere Waco crews were deployed. Contrary to TSI's claims, however, these individual differences do not amount to individual defenses.

Waco has stipulated that both Foremen and Drivers are entitled to compensation for time spent prior to arriving at the job site. As a result, the only compensation policy issue to be litigated collectively is Waco's liability to Erectors for this same time. When working as Erectors, plaintiffs were all

engaged in similar work for the same employer, and subject to the same contested compensation policies. It is that policy - not the individual hours worked - which will be addressed collectively in these proceedings. See Rawls, 244 F.R.D. at 302 (denying motion to decertify and addressing defenses by "subclasses" of plaintiffs).

In any FLSA claim there will be issues of proof concerning hours worked and days on which each individual plaintiff reported. These questions go to the damages due to an individual plaintiff and not to the company's liability to employees as a class. Collective action does not require that "there be no differences among class members" nor does it prohibit individualized inquiry "in connection with fashioning the specific relief or damages to be awarded to each class member." Houston v. URS Corp., 591 F. Supp. 2d 827, 832 (E.D. Va. 2008).

Because employers are in a better position to ensure the accuracy of employment records, the FLSA permits employees to carry their burden to prove damages by establishing that they in fact performed work for which they were not compensated. If employees produce sufficient evidence "to show the amount and extent of that work as a matter of just and reasonable inference," the burden then shifts to the employer "to come forward with evidence of the precise amount of work performed,

or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Anderson v. Mt. Clemons Pottery Co., 328 U.S. 680, 687-88 (1946), superseded on other grounds by statute as stated in Chao v. Self Pride, Inc., 2007 WL 1452030, at **4 (4th Cir. May 17, 2007). The issues raised as "defenses" in TSI's motion to decertify do not affect the question of whether Waco's policy violates the Act. Instead, they are evidence Waco may use to rebut individual claims of compensation due, and in that regard, do not affect certification of the collective action.

If the evidence establishes that individual plaintiffs did not arrive early as directed, or were otherwise not engaged in compensable work on a particular day, they would not be permitted to recover for that day. As set forth above, however, once plaintiffs introduce sufficient evidence to establish "a basis for a reasonable inference as to the extent of damages," the burden shifts to the employer to show the "precise amount of work performed." Mt. Clemons Pottery, 328 U.S. at 687-88.

The existence of these individual deductions, however, does not affect the underlying claim that all plaintiffs were subject to a single policy that required that they report early and engage in other activity directed by their employer for which they have not received compensation. There is no claim, by

either TSI or Waco, that individual plaintiffs, or groups of plaintiffs, were subject to different policies or procedures which would affect the ability of the Court to resolve Erectors' claim collectively.

It also bears mention that this case involves a large number of named plaintiffs, whose varied claims must be decided by the Court even if decertification were granted. Moreover, because many opt-in plaintiffs also have claims against Waco as Drivers and Foremen, it would not serve the needs of judicial economy to jettison these opt-in parties whose claims the company has already agreed to examine.[6]     Accordingly, the undersigned recommends the Court DENY Waco's motion to decertify the class.

## F.   MOTION TO BIFURCATE

Finally, Waco requests that the Court enter an order bifurcating the issues of liability and damages at the trial of this matter.  (ECF No. 138) (joining TSI's motion to bifurcate issues of liability and damages [ECF No. 135]).   Waco argues that, if the Court denies its motion for partial summary judgment, it would be more efficient to bifurcate the single remaining FLSA liability issue—whether Erectors' travel time is

---

[6] Waco paid some additional compensation to Drivers and Foremen, and agreed that their time is compensable.  As a result, the only issue for trial on the Drivers' and Foremen's claims is the amount of compensation due, if any.

29

compensable—from the damages issues. Waco states that resolving this liability issue "will bring substantial clarity to the scope of damages in this case such that trial of the remaining issues may become unnecessary." Id. at 2. Although plaintiffs filed no brief opposing Waco's motion, their counsel argued at the motion hearing that bifurcation would not conserve judicial resources.

Federal Rule of Civil Procedure 42(b) governs a party's request to bifurcate. It states "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, [or] claims ..." Fed. R. Civ. P. 42(b). "While separation of issues for trial is not to be routinely ordered, it is important that it be encouraged where experience has demonstrated its worth." Fed. R. Civ. P. 42, 1966 Amendment. The decision whether to bifurcate is committed to the sound discretion of the trial court. Bowie v. Sorrell, 209 F.2d 49 (4th Cir. 1953).

Bifurcation is appropriate in this matter because it will expedite trial and promote judicial economy. Whether Erectors' travel time is compensable involves common facts that must be applied to one legal standard. However, the issue of damages should they prevail is far more complex. The record shows that the individual plaintiffs worked in different capacities on

different days sometimes as Driver, Foreman, or Erector. As a result, if Erectors' travel time is not found to be compensable, there is no need for what will likely be a lengthy presentation of evidence on damages for time spent when they were not Foremen or Drivers. If Waco is found liable for Erectors' travel time, damages will involve more complicated proof, which may still be streamlined by use of agreed exhibits or evidence. For these reasons, the undersigned recommends that the Court GRANT Waco's motion to bifurcate the issues of liability and damages.

## G.   RECOMMENDATION

For the foregoing reasons, the undersigned concludes: that disputed material facts preclude entry of summary judgment against Erectors on their claims of liability and recommends that Waco's motion for partial summary judgment on this ground be DENIED; that the Erectors are not entitled to the three-year statute of limitations on their claims because Waco did not intentionally violate the FLSA and therefore recommends that Waco's motion for partial summary judgment on this ground be GRANTED; that the plaintiffs are similarly situated with respect to the challenged compensation policies and therefore recommends that Waco's motion to decertify the class be DENIED; and that a bifurcated trial will promote the interests of judicial economy

31

and therefore recommends that Waco's motion to bifurcate the issues of liability and damages be GRANTED.

## H.    REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.   Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.   A district judge shall make a _de novo_ determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.   Thomas v. Arn, 474 U.S. 140 (1985); Carr v.

Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
_____
Douglas E. Miller
United States Magistrate Judge
_____

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

February 17, 2011