UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| TONY L. EPPS, et al., ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 2:10cv189 |
| ) | |
| ARISE SCAFFOLDING & EQUIPMENT, INC.,) | |
| et al., ) | |
|     Defendants. ) | |

**PLAINTIFFS' RESPONSE TO ARISE WACO'S OBJECTION TO
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

The plaintiffs, Tony Epps, et al., on behalf of themselves and all others similarly-situated, by counsel, state as follows for their Response to the Defendant Arise Waco's Objection to the Magistrate Judge's Report and Recommendation.

**1. The Magistrate Did Not Err in Finding a Question of Fact as to Whether the Erectors Were Engaged in Compensable Scaffolding Activities At the Arise Waco Shop**

The defendant Arise Waco is wrong when it contends that the magistrate erred in finding there were disputed facts on its Motion for Summary Judgment as to the Erectors. The plaintiffs will not repeat the arguments or factual contentions included in their memoranda in opposition to the defendant Arise Waco's motion for summary judgment. However, they will reply briefly to some of the arguments advanced by Arise Waco and offer the court additional authority in support of their position.

First, defendant Arise Waco cites *Vega v. Gasper*, 36 F.3d 417, 425 (5th Cir. 1994) for the proposition that the instructions delivered to the workers in this case somehow are insufficient to constitute "instructions" within the meaning of 29 C.F.R. § 785.38. *Vega* is clearly distinguishable factually from this case. The first and most critical difference is simple: "[t]he

1

workers were *not* required to use Gasper's [– the employer's –] buses to get to work in the morning. They chose where they lived and how to get to and from work. Not all of Gasper's field workers rode his buses." *Id.* at 425. Here, the workers were required to report to the Arise Waco shop in the morning and to drive on the Arise Waco vans to the various job sites.

Moreover, the workers in *Gasper* received no instructions before loading the buses and heading to the fields. Instead, they were "told on the bus which field they would pick and what the pay rate would be each day." *Id.* The workers "normally picked only one field per day." *Id.* at 423.

Here, by contrast, all erectors were required to report in the morning either to the Arise Waco shop or the Lowe's parking lot. Dexter Decl. (ECF No. 124-6) ¶¶ 4-5; Weakland Dep. (ECF No. 124-1) 31:14 – 33:7; 36:19 – 39:12. There, they received their job and crew assignments for the day. Dexter Decl. (ECF No. 124-6) ¶ 7; Weakland Dep. (ECF No. 124-1) 125-127; 119-120. Anthony Briggs, a long time foreman, pointed out:

> No, we never met at the job site. In scaffolding, no company meets at the job site. Everybody meets at the shop. I don't care what scaffolding company you work for. People meet at the shop so you get the men aligned, get the men necessary that you need, who can do what. I mean, it's different jobs you got in scaffolding. It's dangerous work, so you want to make sure you got the right men for the work.

Briggs Dep. 48:7-15 (ECF No. 124-3).

Eugene Weakland, the Arise Waco production manager, testified that he "typically" reconfigured the work crews in the morning in order to ensure that he had enough workers on a particular job, because he was typically short workers. Weakland Dep. (ECF No. 124-1) 102:5 – 103:6; 119:24 – 120:7; Reeves Dep. 23:14-19 (ECF No. 124-7) ("All the foremens [sic] would come out of the office and then they would pick who – who Gene said that – Gene would write

out – have a piece of paper and it would say all the foremens [sic] and they would have the name of everybody that's going to be on the crew and the driver."); Briggs Dep. 24:3-11 (ECF No. 124-3) (same); Michael Colona Jones Dep. 8:9-20 (same) (ECF No. 124-10); Keddrick McIntosh Dep. 56:2-17 (same) (ECF No. 124-4). According to Love Dexter, there was not a single morning that "I worked at Arise Waco that David Griffin or Eugene Weakland or whoever was serving as the production manager did not reconfigure the crews in the morning while we were still at the shop (or in the Lowe's parking lot)." Dexter Decl. (ECF No. 124-6) ¶ 8.

Here, unlike *Gasper*, Arise Waco required the workers to assemble in the morning, because the crews did not travel to the same job site. To the contrary, the crews traveled to multiple job sites and it was "necessary" to get the crew and job assignments straightened out before departing for the job sites. Clearly, learning where you will be working, in what capacity you will be working, and the people with whom you will be working constitute "instructions" for the purposes of 29 C.F.R. § 785.38. *Accord Chao v. Akron Insulation and Supply, Inc.*, No. 5:04-CV-0443, 2005 WL 1075067 at *10 (N.D. Ohio May 5, 2005) ("Lombardi required his employees to report to the shop before traveling to the job sites. After reporting to the shop, employees prepared for the workday by receiving assignments, assembling crews and loading trucks. … Under these circumstances, travel is an indispensable part of the employees' principal activities, and the travel time constitutes hours worked.").

Second, the defendant makes much of the fact that 29 C.F.R. § 790.7(d) distinguishes between "heavy equipment" and "hand tools." However, that distinction is irrelevant to 29 U.S.C. § 785.38. Section 785.38 talks in terms of workers being required to report "to pick up and to carry *tools*." It does not refer to "heavy equipment" as does § 790.7(d). Certainly, the regulation would have used the language "heavy equipment" if it was intended to be so narrowly

3

construed. Moreover, they picked up and carried more than just personal hand tools. As noted in the factual section of their original memorandum (ECF No. 124) in opposition, the plaintiffs loaded lanyards and harnesses every single day, and periodically loaded life vests, tyvek suits, ropes, shovels, retractable lanyards, power drills, and hoists. Memo. in Opp. at 4 – 5. Consequently, there are more than enough facts to deny summary judgment on this basis.

Third, the defendant's argument that the work performed by the Erectors at the shop in the morning was *de minimis* is by itself sufficient to merit denying its motion for summary judgment. The *de minimis* rule was first articulated by the Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946). There, the Supreme Court stated:

> We do not, of course, preclude the application of a *de minimis* rule where the minimum walking time is such as to be negligible. The workweek contemplated by § 7(a) must be computed in light of the realities of the industrial world. When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved. The *de minimis* rule can doubtless be applied to much of the walking time involved in this case, but the precise scope of that application can be determined only after the trier of facts makes more definite findings as to the amount of walking time in issue.

*Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946). "As the Supreme Court noted in *Mt. Clemens Pottery*, the precise amount of time that may be considered *de minimis* is ultimately a question for the trier of fact." *Perez v. Mountaire Farms, Inc.*, 610 F. Supp. 2d 499 (D. Md. 2009) (citing *Mt. Clemens Pottery*, 328 U.S. 680, 692 (1946)). Given that whether a certain amount of work is *de minimis* is always a question for the trier of fact, this Court has no choice – drawing all inferences in favor of the non-moving party – to deny Arise Waco's motion for summary judgment on the issue whether the Erectors performed at the Arise Waco shop.

4

Fourth, in arguing in favor of summary judgment, the defendant ignores completely the time the Erectors spent waiting in the morning to receive their job and crew assignments. Plaintiffs' Obj. to Magistrate's Report (ECF No. 160) at 5-6. Numerous Erectors testified that they waited to receive their job and crew assignments while at the Arise Waco yard or Lowe's parking lot. *Id.* Such waiting – when done at the employer's behest and for the employer's benefit – is compensable time under the FLSA. *Rumpz v. American Drilling & Testing, Inc.*, No. 09-10971, 2010 WL 1416990 at *2 (E.D. Mich. Apr. 8, 2010) ("The Sixth Circuit has held that employees must be compensated for 'wait time' at an employer's place of business if it's 'for the employer's benefit and at its behest.'" (quoting *Chao v. Akron Insulation and Supply, Inc.*, 184 Fed. App'x 508, 511 (6th Cir. 2006)); *Preston v. Settle Down Enterprises, Inc.*, 90 F. Supp. 2d 1267, 1278-1279 (N.D. Ga. 2000) ("Time spent waiting for an employer's call to duty may be compensable under the FLSA. … The inquiry is whether 'the time is spent predominately for the employer's benefit or for the employee's.'" (quoting *Birdwell v. City of Gadsden Ala.*, 970 F.2d 802, 807 (11th Cir. 1992))).

For all of these reasons, the Court should adopt the Magistrate's Report and Recommendation and deny Arise Waco's motion for partial summary judgment on the claims of the Erectors.

### 2. **Willfulness and Good Faith**

The defendants are correct that the magistrate judge did not rule on the issue of good faith in his Report. The plaintiffs have contended in their objections to the Magistrate's Report (ECF No. 160) that the Magistrate Judge erred in finding that the defendant Arise Waco did not act willfully in violating the FLSA with respect to the Erectors. Consequently, the plaintiffs would

also contend that it would be error to grant summary judgment on the issue whether Arise Waco acted in good faith.

As noted in the plaintiffs' objections to the magistrate's report, there are more than sufficient facts in evidence that would make willfulness an issue to be decided by a jury. Besides the authority cited in their original objection, the plaintiffs would cite the court to *O'Brien v. Encotech Constr.*, No. 00-CV-1133, 2004 WL 609798 at *11 (N.D. Ill. Mar. 23, 2004), where on facts very similar to those in this case, the court decided that factual issues precluded it from granting summary judgment on the issue of willfulness. *See also Twaddle v. RKE Trucking Co.*, No. 2:04-CV-557, 2006 WL 840388 (S.D. Ohio Mar. 29, 2006) (court held that plaintiffs' challenge to the accuracy of defendant's recordkeeping methods supported claim that defendant acted willfully in allegedly violating FLSA and thus denied employer's motion for summary judgment on willfulness); *Majchrzak v. Chrysler Credit Corp.*, 537 F. Supp. 33, 36 (E.D. Mich.1981) (finding willful violation of overtime provisions where company policy of not recording "compensation time" earned for working in excess of forty hours per week was "susceptible to abuse and indeed was abused herein").

As for good faith, the test for establishing whether an employer acted in good faith is set out in the statute. Unlike willfulness, the employer bears the burden of showing that it acted in good faith. If the employer can show that it acted in good faith, then the employees who can establish an FLSA violation are not entitled to recover liquidated damages:

> Liquidated damages "are considered compensatory rather than punitive in nature," *Reich v. Southern New England Telecommunications Corp*., 121 F.3d 58, 71 (2d Cir. 1997) (citing *Brooklyn Sav. Bank v. O'Neill*, 324 U.S. 697, 707 (1945)), and constitute "compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Id.* (quoting

> *Brooklyn Sav. Bank*, 324 U.S. at 707). In its sound discretion, however, a court may refuse to award liquidated damages if:
>
>> the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act.

*Roy v. County of Lexington, S.C.*, 141 F.3d 533, 548 (4th Cir. 1998) (quoting 29 U.S.C. § 260).

However, as the Fourth Circuit has noted,

> [the] FLSA plainly envisions that liquidated damages in an amount equal to the unpaid overtime compensation are the norm for violations of § 7 of the Act. 29 U.S.C. § 216(b). Only where "the employer shows to the satisfaction of the court that the act or omission giving rise to [the] action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of FLSA may the court exercise its discretion to deny liquidated damages. *Id.* at § 260; *see also BrinkleyObu v. Hughes Training, Inc.*, 36 F.3d 336, 357 (4th Cir. 1994); *Burnley v. Short*, 730 F.2d 136, 140 (4th Cir. 1984). We have previously interpreted the exemption entailed by § 260 to place a "plain and substantial burden" upon the employer to persuade the court that the "failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." *Brinkley-Obu*, 36 F.3d at 357 (quoting *Richard v. Marriott Corp.*, 549 F.2d 303, 306 (4th Cir.), *cert. denied*, 433 U.S. 915 (1977)) (internal quotation marks omitted).

*Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997).

Here, the defendant Arise Waco has proffered absolutely no facts to meet its "plain and substantial burden" that its "failure to obey the statute was in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." Moreover, its own factual assertions in this litigation should foreclose its claim that it acted in good faith.

Most telling, the position the defendant Arise Waco has taken in its summary judgment motion – which position the Magistrate adopted – contradicts its own admissions in its pleadings, which admissions are binding on it. The Magistrate noted as follows in his report: "there is ample evidence in the record that Waco **believed** travel time was not compensable *for workers not driving or supervising the work crews*." Report (ECF No. 157) at 22 (emphasis added). That is incorrect. **Arise Waco believed and asserted that travel time was not compensable for <u>all</u> of its workers – not just erectors, but also drivers and foremen.** That is the position it took throughout the litigation until it was caught red-handed in this lawsuit. After the deposition of Paul Zimmerman, who conceded that foremen were required to report for foremen's meetings and that drivers were required to report in order to be able to drive the Arise Waco vans, the company's attorneys abandoned that position in the litigation, knowing it to be unwinnable.

However, Arise Waco's original judicial admissions clearly demonstrate that its actions were both willful and not in good faith. In paragraph 36 of the Amended Complaint (ECF No. 12), the plaintiffs pleaded as follows:

> More specifically, the plaintiffs and the Scaffolding Workers were required to report to the Waco shop or the Lowe's parking lot in Portsmouth every day on or before 6:00 a.m. The reporting time changed depending on the time of year. Sometimes, they were required to report earlier than 6:00 a.m. There, the plaintiffs gathered tools, waited to be assigned to a specific job by someone from Waco, and then commuted to various job sites.

Am. Compl. ¶ 36 (ECF No. 12).

Arise Waco responded to that allegation as follows:

> Defendant Waco admits that some employees *voluntarily reported* to Lowe's or the Waco shop, *for their convenience*, in order to get transportation to the Waco job sites where they would work that day. The remaining allegations of Paragraph 36 are denied.

Ans. to 1st Am. Compl. ¶ 36 (ECF No. 23) (emphasis added). In other words, Arise Waco's defense to the claims of the erectors, drivers, and foremen was not: we did not pay the workers – including drivers and foremen – because they did not perform any work before proceeding to the job site, the position they now assert. Instead, Arise Waco's defense was: we did not pay the workers because they were not required to report to the Arise Waco shop in the morning and were permitted to drive directly to the job site. In addition, they denied all of the facts – that the plaintiffs loaded tools and received their job assignments after they reported to the shop – which would make the time compensable. Arise Waco denied these facts instead of maintaining that these facts were insufficient to make the time compensable, the position it asserts on summary judgment. These denials are what demonstrate that Arise Waco acted willfully and not in good faith. However, subsequent admissions by Paul Zimmerman, one of the owners of Arise Waco, effectively destroyed that defense as far as the drivers and foremen were concerned. Zimmerman Dep. (ECF No. 119-2) at pages 43-45 of 51. Consequently, their attorneys have abandoned it as to the foremen and drivers. Final Pretrial Order (ECF No. 137) Stipulated Facts No. 60-64.

     Nevertheless, Arise Waco's original judicial admissions are binding on it for the purposes of a summary judgment motion. *Bright v. QSP, Inc.*, 20 F.3d 1300, 1305 (4th Cir. 1994) ("It is well-established that 'even if the post-pleading evidence conflicts with the evidence in the pleadings, admissions in the pleadings are binding on the parties and may support summary judgment against the party making such admissions.'" (quoting *Missouri Housing Dev. Comm'n v. Brice*, 919 F.2d 1306, 1315 (8th Cir. 1990)). *See White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983) ("Factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them.").

Having been caught in a lie, Arise Waco should not be permitted to argue that it "believed" the time in the morning was not compensable because the Erectors performed *de minimis* work at the Arise Waco shop or that it had encountered the issue before in California. It denied not once, but twice that anyone was required to report to the Arise Waco shop in the morning. It denied not once, but twice that the workers loaded tools in the morning. It denied not once, but twice that the workers received their job assignments in the morning. The facts adduced in the plaintiffs' memorandum clearly demonstrate, however, that all of these denials are untrue. Paul Zimmerman, an owner of Arise Waco, had to admit that drivers and foremen were required to report in the morning. However, he still maintained in his deposition that for all the other workers it was optional; they were permitted to drive directly to the job site. He also maintained that the workers did nothing before proceeding to the job site. If keeping inaccurate time records is sufficient to create a factual issue on willfulness, *see Twaddle v. RKE Trucking Co.*, No. 2:04-CV-557, 2006 WL 840388 (S.D. Ohio Mar. 29, 2006) (court held that plaintiffs' challenge to the accuracy of defendant's recordkeeping methods supported claim that defendant acted willfully in allegedly violating FLSA and thus denied employer's motion for summary judgment on willfulness), then asserting facts in pleadings that are contradicted by all of the evidence adduced on summary judgment should also create a factual issue as to willfulness, and necessarily good faith. For these reasons, the Court should deny the defendant's Motion for Summary Judgment on the issue of good faith and elect not to adopt the Magistrate's recommendation on the issue of willfulness.

**TONY L. EPPS, et al.,
for themselves and all others
similarly situated.**

By: _____/s/_____
    Christian L. Connell
    Bar No. 35009

10

Counsel for Plaintiffs
CHRISTIAN L. CONNELL, P.C.
555 East Main Street, Suite 1410
Norfolk, Virginia 23510
757.533.6500
757.533.6565 (fax)
email: christian.connell@verizon.net

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2011, I will electronically file the foregoing PLAINTIFFS' RESPONSE TO ARISE WACO'S OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Mr. Scott W. Kezman
swkezman@kaufcan.com
Ms. Anna R. Smith
arsmith@kaufcan.com
KAUFMAN & CANOLES, P.C.
150 W. Main St., Suite 2100
Norfolk, VA 23510

Mr. Christopher Alan Abel
chris.abel@troutmansanders.com
Ms. Dawn L. Serafine
dawn.serafine@troutmansanders.com
TROUTMAN SANDERS LLP
150 W. Main Street, Suite 1600
Norfolk, VA 23510

By: _____/s/_____
Christian L. Connell
Bar No. 35009
Counsel for Plaintiffs
CHRISTIAN L. CONNELL, P.C.
555 East Main Street, Suite 1410
Norfolk, Virginia 23510
757.533.6500
757.533.6565 (fax)
email: christian.connell@verizon.net